IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| COREY CROCKETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) NO. 3:20-cv-00199 ) |
| DCSO MEDICAL DEPARTMENT, et al., | ) JUDGE RICHARDSON ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Before the Court is a pro se complaint for alleged violation of civil rights pursuant to 42 U.S.C. § 1983 (Doc. No. 1), filed by Corey Crockett, an inmate in the custody of the Davidson County Sheriff's Office (DCSO) in Nashville, Tennessee. Plaintiff also filed an application to proceed in forma pauperis (IFP) (Doc. No. 2), a supplement to his complaint (Doc. No. 4), and two additional notices (Doc. Nos. 5 & 6). The complaint is now before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**INITIAL REVIEW OF THE COMPLAINT**

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review

of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his federal constitutional rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the

2

Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

III. ALLEGATIONS AND CLAIMS

Plaintiff alleges that, when he returned to the DCSO after a month-long evaluation in a mental health facility, his personal property—including materials he had compiled in preparation for his criminal defense and a civil lawsuit against DCSO and its Medical Department—had been disposed of in retaliation for internal grievances he had filed. (Doc. No. 1 at 5, 7.) He alleges that the officials responsible for the safekeeping of his property included Sgt. Myatt, who assured Plaintiff that his property would be stored while he was away, and Correctional Officer Skelton, who was to pack and store the property in the appropriate manner but evidently failed to do so. These officials allegedly accused Plaintiff of flushing his property down the toilet, which he denies. (*Id.*) He alleges that Sgt. Myatt took the position that Plaintiff did not actually have any of the allegedly missing personal property to begin with, though the officers continued to search for it. (*Id.* at 8.) Plaintiff alleges that video evidence "should show Officer Skelton entering my room and exiting with my property [and] a clear trash bag in which he would have had to print my picture out [and] place inside my bag." (Doc. No. 1 at 8.) He gives the following explanation for the disappearance of his property and his potential claim against the DCSO:

> There's a mob of people who are nothing but regular citizens, but are organized [and] work in regular jobs that carry out malicious doings like losing a person's property after knowing that the lawsuit is against the entity they work for [and] it'll impact the[ir] positions if things [occur] like lawsuits [claiming staff] deprived an individual of their freedom by DCSO staff not escorting inmates to court that are in RHO at the same time they escort general population inmates which is violating their right to be present at court . . . [be]cause once it gets to[o] late in the day the judges start rescheduling inmates due to their absence [and] the time it'll take to retrieve them so that's extra time [lost to inmates] . . . who were scheduled . . . that day [and] . . . could've struck a deal or had o[u]r cases dismissed at a hearing for lack of evidence or so on[,] denying our 6th Amendment or constitutional right . . .

3

to presentment [and] to face my accuser at court [and] depriving [me] of my liberty by doing so.

(*Id.* at 8–9.) Plaintiff claims that "the case manager," Mrs. Dixon, is now denying him the right to use law books and a tablet computer he needs in order to litigate the claim described above, apparently based on his being on "pie-flap restriction," and that she lied in response to a grievance he filed about the denial. (*Id.* at 9–10.)

Plaintiff's claim against the DCSO Medical Department is based on his hernia condition, for which he was sent to the hospital on January 13, 2020, resulting in the scheduling of hernia surgery "in the near future." (*Id.* at 11.) He alleges that he was then sent for his inpatient mental health evaluation on January 28, and when he returned to jail on February 20, he consulted two Medical Department nurses and was given conflicting information about whether he was still scheduled for hernia surgery. Allegedly, he was told by one nurse that his surgery was still scheduled, but another nurse told him that it was not scheduled because it still had to be approved as a surgery that the state would pay for. (*Id.*) Plaintiff asserts his understanding that tax dollars are set aside for such emergency treatment, and that "inmates are suppose[d] to receive the same medical and dental care as free world people." (*Id.*) He alleges that his hernia pain is exacerbated by the fact that his hernia belt was confiscated after he used it to secret the Tylenol pills he admits he was accumulating. This accumulation of pain pills violated the DCSO policy that all pills be taken when they are distributed at pill call, though Plaintiff argues that enforcement of that policy does not comport with the "prn" or "as needed" prescription of Tylenol by the Medical Department. (*Id.* at 11–12.) He believes that "DCSO had [him] miss [his] surgery and [is] now trying to give [him] the run around about it." (*Id.* at 12.)

The complaint lists as defendants the DCSO Medical Department and Sgt. Myatt, C/O Skelton, and Case Manager Dixon in their individual capacities. (*Id.* at 13.) In a statement mailed

4

to the Court on March 9, 2020 (Doc. No. 4), Plaintiff reiterates the claims described above, but also names five additional individuals—not including Case Manager Dixon—whom he alleges to be corrupt and "part of the plot of losing [his] property and lying to their superiors." (*Id.* at 2.) However, in a supplemental complaint filed shortly thereafter (Doc. No. 5, filed on March 19, 2020), Plaintiff clarifies that he asserts a claim against the DCSO Medical Department for denial of medical care and a claim against Skelton and Myatt for tampering with evidence. (*Id.* at 4.) He seeks damages against these three Defendants without mentioning any claim against Dixon. (*Id.*) His supplement further clarifies that, as of March 13, 2020, he had not had the hernia surgery that was recommended on January 13 but had been assured that the surgery was scheduled. (*Id.* at 2.)

In a second supplement to his complaint (Doc. No. 6, filed on May 14, 2020), Plaintiff revealed that a DCSO health services administrator explained to him that his hernia surgery was on hold "[un]til the offices opened back up," in light of the COVID-19 pandemic. (*Id.* at 3.) He alleges that when he asked a nurse on April 30 whether his surgery was still scheduled, she responded that "it was but it's not in the upcoming weeks." (*Id.*) Plaintiff states that "the problem is my surgery has been overlooked by DCSO and the Covid-19 virus didn't hit until mid March and DCSO should have had info on my surgery by then. . . ." (*Id.*). Finally, Plaintiff alleges that a member of the "DCSO Medical staff" violated his HIPAA rights by coming to his cell and discussing his hernia when "the whole pod could hear her," and that, on December 25, 2019, DCSO guards threw punches in an effort to quell an altercation in his pod, rather than use mace as they are trained. (*Id.*)

5

Case 3:20-cv-00199   Document 7   Filed 09/08/20   Page 5 of 10 PageID #: 45

IV. ANALYSIS

    A. Proper Defendants

As an initial matter, neither the DCSO nor its Medical Department is a proper defendant under Section 1983, which creates a cause of action against "[e]very person" who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. "For purposes of § 1983, 'person' includes individuals and 'bodies politic and corporate.'" *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n. 55 (1978)). The medical department of a jail facility, like the jail itself, "is a place; it is not a 'person' that can be sued under 42 U.S.C. § 1983." *Tucker v. Salandy*, No. 3:17-cv-00671, 2017 WL 2438401, at *2 (M.D. Tenn. June 6, 2017).

Nor can Plaintiff recover for any actions taken by unidentified DCSO guards, whom he does not name as defendants to this action, against other inmates in responding to the alleged altercation on December 25, 2019. He does not allege that he personally suffered any harm as a result of that altercation and the response by DCSO guards, and he may not bring claims on behalf of a third party who did suffer harm. *Corn v. Sparkman*, No. 95-5494, 1996 WL 185753 (6th Cir. Apr. 17, 1996) ("A prisoner cannot bring claims on behalf of other prisoners . . . [but] must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights.")

Finally, with regard to the claim of the original complaint against Defendant Dixon for withholding law books and a tablet computer, the Court deems this claim to have been abandoned based on Plaintiff's subsequent filings. (*See* Doc. Nos. 4–6.)

6

B. Medical Care Claim

Even if Plaintiff's medical care claim had been asserted against a proper defendant, he has failed to adequately allege that his constitutional rights were violated. Regardless of whether he is a pretrial detainee proceeding under the Fourteenth Amendment or a convicted inmate proceeding under the Eighth Amendment, to recover for inadequate medical care, Plaintiff must plausibly allege deliberate indifference to his serious medical needs. *Darrah v. Krisher*, 865 F.3d 361, 367 (6th Cir. 2017). That claim has both objective and subjective components. The objective component requires that Plaintiff have a sufficiently serious medical need related to his hernia. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). The subjective component requires proof that his medical providers understood yet consciously disregarded that risk in failing to schedule his surgery with due dispatch. *See id.* at 738. Deliberate indifference thus entails conduct that "amounted to more than ordinary negligence or medical malpractice." *Atkins v. Parker*, No. 19-6243, 2020 WL 4932748, at *4 (6th Cir. Aug. 24, 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

Although it does not appear that Plaintiff's hernia presented an emergency condition, he alleges that it produces pain and must be surgically repaired; it is thus a sufficiently serious medical condition for these purposes. However, contrary to Plaintiff's understanding, a prisoner is not necessarily entitled to the same treatment options or priority of surgical intervention as a free citizen with the same condition might enjoy. "An inmate is entitled to adequate medical care, not the best care possible." *Rhinehart*, 894 F.3d at 750. According to Plaintiff's allegations, DCSO Medical Department employees treated Plaintiff's hernia symptoms with Tylenol and, until its confiscation for security reasons, a hernia belt. He was apparently scheduled for the surgery recommended by the hospital physician, albeit not within the amount of time that he would have

7

preferred. Plaintiff had been back from his off-campus mental health evaluation for only roughly a month before the COVID-19 pandemic put a hold on all non-emergency surgeries. In these circumstances, Plaintiff cannot maintain a nonfrivolous claim that any Defendant acted, or failed to act, with deliberate indifference in order to deny or delay his surgery.

Moreover, Plaintiff's allegation that a DCSO Medical Department staff member violated his rights under the Health Insurance Portability and Accountability Act (HIPAA) to confidentiality with regard to his medical treatment does not support a viable claim under Section 1983. As Plaintiff has previously been informed, "[c]ourts have repeatedly held that HIPAA does not create a private right" and "cannot be privately enforced . . . via § 1983." *Crockett v. Core Civic*, No. 3:17-cv-00746, 2017 WL 3888352, at *4 (M.D. Tenn. Sept. 5, 2017) (quoting *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 138–39 (8th Cir. 2009) (collecting cases)); *see also Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("Any HIPAA claim fails as HIPAA does not create a private right of action for alleged disclosures of confidential medical information.").

C. Retaliation Claim

Finally, the Court turns to Plaintiff's allegation that Defendants Myatt and Skelton retaliated against him for filing grievances by disposing of his personal property—including documents in support of the lawsuit Plaintiff intended to file against DCSO (hence, Plaintiff's claim of "tampering with evidence")—while Plaintiff was away at his mental health evaluation. The Court construes these allegations to assert a First Amendment retaliation claim. In order to make plausible his entitlement to relief on such a claim, Plaintiff must allege "that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of 'ordinary firmness from continuing to engage in that conduct,' and (3) 'the adverse action was

motivated at least in part by the [prisoner's] protected conduct.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc)).

The filing of nonfrivolous grievances against prison officials is indisputably protected conduct. *Id.* (citing *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000)). Plaintiff alleges that he grieved the fact that "DCSO staff [were] not escorting inmates to court that are in RHO at the same time they escort general population inmates," which in his case resulted in missing a court date or dates. (Doc. No. 1 at 5–9.) For purposes of initial review, the Court finds that this grievance filing was protected conduct. Moreover, the Sixth Circuit has held that "deprivation of personal and legal property can be considered an adverse action." *Clark v. Johnston*, 413 F. App'x 804, 815 (6th Cir. 2011) (citing *Bell v. Johnson*, 308 F.3d 594, 604 (6th Cir. 2002) (relying on "a number of cases from other circuits [that] have held that confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim")). Finally, as to the third retaliation element of a causal link between the protected conduct and the adverse action, "[b]ecause the question is whether the adverse action was taken (at least in part) because of the protected conduct, the causation inquiry centers on the defendant's motive." *Id.* (quoting *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007)). Plaintiff infers Defendants' motive to protect their employer from the lawsuit that he intended to file (Doc. No. 1 at 8–9), and notes that his property was lost despite clear policies for storage of personal property whenever an inmate is temporarily absent from the facility. (*Id.* at 8.) He further notes that Defendants accused him of flushing his documents down the toilet and stated that no documents were present in his cell. (*Id.* at 5, 7–8.) Construing these allegations in the light most favorable to Plaintiff as required, the Court finds for purposes of initial review that Plaintiff has sufficiently alleged a causal link between his filing of grievances in preparation to file suit against DCSO and the loss of his property

9

during the time he spent away from the facility. Thus, his retaliation claim will be allowed to proceed against Defendants Myatt and Skelton. *See Clark*, 413 F. App'x at 815 (finding First Amendment retaliation claim adequately pleaded in light of less stringent pleading requirements for pro se litigants, and because inmate "might be able to put forth evidence" connecting protected conduct and adverse action, "[e]ven if it is unlikely that [he] will prove these facts" at later stages of the proceedings).

## **CONCLUSION**

For the reasons set forth above, the Court finds that the complaint states a nonfrivolous claim against Defendants Myatt and Skelton that will proceed for further development. Defendants DCSO Medical Department and Case Manager Dixon will be dismissed from this action.

An appropriate Order will enter.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE